SEALED   FILED

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

FEB 22 2018



CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK



In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

Dell laptop, S/N DQN2MX1; Canon printer, S/N KKVB10449; and Samsung cell phone, S/N R28J90113ET, IEM 356445080267724.

) ) ) ) ) )

Case No.

**1: 1 8 SW   0 0 0 7 1 EPG**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Three electronic devices further described in Attachment A1, A2 and A3, incorporated by reference.

located in the _____ Eastern _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:

Evidence and fruits of and property intended to be use in committing a crime as described in Attachment B, incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC § 471 | Counterfeiting U.S. Currency |
| 18 USC § 513(a) | Making, Uttering or Possessing Counterfeited Securities |
| 18 USC § 1028(a)(1) & (7) | Fraud in Connection with Identification Documents |

The application is based on these facts:
See Attached Affidavit, incorporated by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Anthony Sims, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __2/22/18__

_____
*Judge's signature*

City and state: Fresno, California

Erica P. Grosjean, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT OF SPECIAL AGENT ANTHONY SIMS JR.**

I, Anthony Sims Jr., being duly sworn, hereby declare and state:

## I.  INTRODUCTION

1.  I am an "investigative or law enforcement officer" within the meaning of Section 2510(7) of Title 18 of the United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18 and Title 21 of the United States Code. I am also a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C).

2.  I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations (HSI) since November 2015. Before serving as an HSI Special Agent, I was a Special Agent with the United States Secret Service from May 2012 to November 2015. During my tenure as a Special Agent, I have completed the Criminal Investigator Training Program (CITP), and Homeland Security Investigations Special Agent Training (HSI-SAT) at the Federal Law Enforcement Training Center, in Glynco, GA, and the United States Secret Service Special Agent Training Course (SATC) in Beltsville, MD.

3.  I have conducted multiple criminal investigations involving violations of state and federal laws, including financial crimes, identity theft, counterfeit identification documents, counterfeit financial obligations, wire fraud, investment fraud, cyber-crime, narcotics trafficking, child exploitation, the forensic recovery of digital evidence, and network intrusions. Prior to my employment with DHS, I served as a United States Army Reserve Officer, assigned as a rotary wing aviator, receiving my commission as a Second Lieutenant in 2001. I currently hold the rank of Captain. I received a Bachelor's of Arts degree in Psychology from Texas Woman's University in 2008 and I am obtaining a Master's of Business Administration from Tarleton State University and a Master's of Computer Science from Sam Houston State University. I have discussed with numerous law enforcement officers, defendants, and confidential informants the methods and practices used by identity thieves.

4.  I submit this affidavit in support of an application for a search warrant for a **(A) Dell laptop, serial number: DQN2MX1; (B) white Canon brand printer, serial number: KKVB10449; and (C) black Samsung cell phone, serial number: R28J90113ET, IEM: 356445080267724**

1  hereinafter referred to as the **TARGET DEVICES**. The **TARGET DEVICES** were seized by the Kern

2  County Sheriff's Office from Andrew **KELLEY** and Savannah **BROWN**'s residence at 1110 Doyle

3  Street, Bakersfield, CA on January 18, 2018 pursuant to a probation search as described below. The

4  **TARGET DEVICES** are currently held the Kern County Sheriff's Office Property vault at **1501 L St.**

5  **Bakersfield, CA 93301**.

6      5.      I have personally participated in the investigation set forth below.  I am familiar with the

7  facts and circumstances of the investigation through my personal participation; from my discussions

8  with witnesses involved in the investigation; and from my review of records and reports relating to the

9  investigation.  Since this affidavit is being submitted for the limited purpose of securing a search warrant

10  for the **TARGET DEVICES**, I have not included details of every aspect of the investigation.

11      6.      As set forth below, probable cause exists to believe that the search warrant will lead to

12  evidence of offenses involving (1) Counterfeiting United States Currency, (2) Making, Uttering or

13  Possessing Counterfeited Securities, and (3) Fraud in Connection with Identification Documents in

14  violation of Title 18, United States Codes, §§ 471, 513(a) and 1028(a)(1) & (7) (the "**TARGET**

15  **OFFENSES**").  Further, there is probable cause to believe that the offenses have been committed or are

16  being committed by Andrew **KELLEY** and Savannah **BROWN**, the users of the **TARGET DEVICES**.

17  There is also probable cause to believe that Andrew **KELLEY** and Savannah **BROWN** are using the

18  **TARGET DEVICES** to commit or assist in the commission of the offenses described above, and that

19  the search warrant may lead to the identification of other individuals who are engaged in the commission

20  of said offenses.

## II.      APPLICABLE LAWS AND DEFINITIONS

22      7.      **18 U.S. Code § 471 - Obligations or securities of United States** prohibits anyone who,

23  with intent to defraud, falsely makes, forges, counterfeits, or alters any obligation or other security of the

24  United States. **18 U.S. Code § 513(a) - Counterfeit Securities** prohibits anyone from making, uttering

25  or possessing a counterfeited security of a State or of an organization [operating in/affecting interstate

26  commerce]. **18 U.S. Code § 1028(a)(1) & (7) - Fraud in connection with identification documents**

27  prohibits anyone [under circumstances in or affecting interstate commerce] from (1) knowingly and

28  without lawful authority producing an identification document, authentication feature, or a false

1   identification document, [or] (7) knowingly transferring, possessing, or using, without lawful authority,

2   a means of identification of another person with the intent to commit, or to aid or abet, or in connection

3   with, any unlawful activity that constitutes a violation of Federal law, or that constitutes a felony under

4   any applicable State or local law.

5        8.   **Definitions**

6           a.     A "Computer," as defined in 18 U.S.C. §1030(e)(1), refers to "an electronic,

7   magnetic, optical, electrochemical, or other high speed data processing device performing

8   logical, arithmetic, or storage functions, and includes any data storage facility or

9   communications facility directly related to or operating in conjunction with such device.

10        b.     A "Smartphone" is a cellular phone that performs many of the functions of a

11   computer, typically having a touchscreen interface, Internet access, and an operating

12   system capable of running downloaded applications.  Common examples include the

13   Apple iPhone and the Samsung Galaxy.

14

15        c.     A "Tablet Computer" is a computer that accepts input directly onto an LCD

16   screen rather than via a keyboard or mouse.  Common examples include the Apple iPad

17   and the Samsung Galaxy Tab.

18

19        d.     "Computer hardware" consists of all equipment that can receive, capture, collect,

20   analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or

21   similar computer impulses or data.  Computer hardware includes any data-processing

22   devices (including, but not limited to, central processing units, internal and peripheral

23   storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes,

24   and other memory storage devices); peripheral input/output devices (including, but not

25   limited to, keyboards, printers, video display monitors, and related communications

26   devices such as cables and connections); as well as any devices, mechanisms, or parts

27

28

that can be used to restrict access to computer hardware (including, but not limited to, physical keys and locks).

e.     "Computer passwords and data security devices" consist of information or items designed to restrict access to or hide computer software, documentation, or data.  Data security devices may consist of hardware, software, or other programming code.  A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices.  Data security hardware may include encryption devices, chips, and circuit boards.  Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched.  Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

f.     An access devices, as defined by 18 U.S.C. § 1029(e)(1), is any "card, plate, code, account number, electronic serial number, mobile identification number, personal identification number, or other telecommunications service, equipment, or instrument identifier, or other means of account access that can be used, alone or in conjunction with another access device, to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds...."

## III.     STATEMENT OF PROBABLE CAUSE

### A.     Overview of Investigation

9.     On January 18, 2018, Kern County Probation Officer Valente Lule, notified this affiant that Andrew **KELLEY** and Savannah **BROWN** were arrested by the Kern County Sheriff's Office (KCSO). Continuing on this day, I responded to the KCSO Central Receiving Facility to assist the arresting Deputies, Genero Gonzales (Badge 1269) and Hector Garcia (Badge 1359). According to

1  Deputy Gonzales, KCSO received a call for service on January, 17, 2018 from Valley Motor Sports,

2  3917 Buck Owens Blvd, Bakersfield, CA 93308. Deputies Gonzales and Garcia responded and

3  interviewed a store employee in possession of a $9800.00 Chase Bank Cashier's check, of which, the

4  store employee believed to be fraudulent. The employee stated that a woman, who presented a Florida

5  Driver's license in the name of J. Cavalier, attempted to finance a motorcycle. The Valley Motor

6  employee stated that he/she thought the license looked suspicious and therefor requested a cashier's

7  check from the woman in order to finalize the transaction; this prompted the woman to leave the store

8  and return with the check. Deputy Ryan Pitcher, assisting with the investigation, recognized the woman

9  in the Florida Driver's license as Savannah **BROWN,** and further positively identified **BROWN** by

10 matching her photo with her official law enforcement database photo. Deputy Pitcher, through previous

11 encounters with **BROWN,** knew her to be married to Andrew **KELLEY,** both of whom resided at 1110

12 Doyle Street, Bakersfield, CA (hereinafter referred to as the **TARGET RESIDENCE) BROWN** was

13 also wanted and the subject of arrest warrants for multiple felonies in relation to Kern County Sheriff's

14 case number 2018-0004661.

15    **B.   KCSO Probation Search and Arrest of BROWN and KELLEY**

16        10.    According to Deputy Garcia's report 2018-00008936, on that same day, he and Deputy

17 Gonzales and responded the **TARGET RESIDENCE** and made contact with a Caucasian male and

18 female who were sitting inside of a detached garage of the residence. Deputies positively identified the

19 Subjects Savannah **BROWN** and Andrew **KELLEY.** Records checks revealed that **KELLEY** was on

20 felony probation under Kern County case number BF163097A, of which his probation terms allow any

21 peace officer or probation officer to search his person, vehicle or residence, without the necessity of a

22 search warrant, or probable cause, for stolen property, identifying documents, and other individual's

23 names, narcotics and dangerous drugs. **BROWN** was detained by the Deputies pursuant to the on-going

24 investigation while **KELLEY** was detained pursuant to a probation search of the property.

25        11.    The probation search of the detached garage yielded the following, as listed the Kern

26 County Sheriff's property report:

27        •  **Item HG#05**, several photo copies of a Florida Driver's license (number K523-503-85-

28           606-0) located on top of a desk on the north side of the garage; the photo copies of the

1    license had the name J. Cavalier printed on it and **BROWN'S** picture;

2    • **Item HG#21**, on the same desk was a gray Dell laptop computer (serial number:

3    DQN2MX1) which was connected to;

4    • **Item HG#22**, a white Canon printer (serial number KKVB10449).

5    12.    The following items were found in the garage on a bed inside of a black wallet:

6    • **Item HG#01**, two counterfeit $100 bills with a hand painted watermark, number

7    DB96003269A was on both bills;

8    • **Item HG#02**, two counterfeit $100 bills, number AF55461481C was on both bills;

9    • **Item HG#03**, two counterfeit $100 bills, number IL11799169C on both bills;

10    • **Item HG#04**, one counterfeit $50 bill, number HB11626146E.

11    13.    A bottle of acrylic paint and a black pot were containing a dark green colored substance

12    was found in the seat of a chair in the garage. Next to this chair was another chair containing two small

13    plastic containers and a green plastic soap container, of which all were filled with an unknown green

14    colored substance, similar in description to the substance found in the black pot.  Deputy Garcia stated

15    in his report that he poured the green liquid from the plastic containers and discovered the following:

16    • **Item HG#10,** one discolored $1 bill, number: D20384939H;

17    • **Item HG#11**, one discolored $1 bill, number: C02026743C;

18    • **Item HG#12**, one discolored $1 bill, number: E44180690G;

19    • **Item HG#13**, one discolored $1 bill, number: L32112619R;

20    • **Item HG#14**, one discolored $1 bill, number: G19788103B;

21    • **Item HG#15**, one counterfeit $100 dollar bill with an unreadable serial number, and

22    • **Item HG#16,** two discolored blank bills of an unknown amount.

23    14.    Deputies also located **item#18**, a two fluid ounce plastic bottle of glitter acrylic paint,

24    and **item#20**, a two ounce plastic bottle of satin acrylic paint, and **item#07**, one California driver's

25    license (#D1705972) with the name Jessica Marie Dillingham on it, one glass, smoking bong, and 3.5

26    grams of suspected methamphetamine. Deputies arrested **BROWN** and **KELLEY,** charging them with

27    California Penal Codes (PC) 530.5(A), Unauthorized Use Of Identifying Information of Another, PC

28    470B Possession of Driver's License/Identification to Commit Forgery, PC 460 (B) Burglary: 2nd

1   Degree, PC 496(A) Receive/ECT Known Stolen Property, PC 470(D) Forgery, PC 476 Make/Pass

2   Fictitious checks, California Health and Safety (HS) Codes 11377(A) Misd Possession of Controlled

3   Substance, and HS Possession of Controlled Substance Paraphernalia. **BROWN** and **KELLEY** were

4   transported to Kern County Sheriff's Central Receiving Facility for interviews and booking.

5       **C.**     **Miranda Interviews of BROWN and KELLEY**

6       15.     Deputy Garcia, while utilizing a digital recorder (evidence item#26) read **BROWN**

7   Miranda warnings from his agency approved card, to which BROWN replied "Yes" after each right was

8   read to her. The following is a synopsis of the recorded statements **BROWN** made under Miranda,

9   (Reference the recorded media for detailed quotes of the conversation),:

10      16.     Deputy Garcia asked **BROWN** her name, to which she replied, "Savannah Brown."

11  Deputy Garcia asked **BROWN** if she had recently tried to make a purchase at Valley Cycle and

12  Motorsport and she said, "No." Deputy Garcia asked **BROWN** if she had been there recently and she

13  said, "No." Deputy Garcia asked **BROWN** who the other person inside the garage with her was, and she

14  said it was her husband, "Andrew Kelley." Deputy Garcia then asked **BROWN** if **KELLEY** had ever

15  been to Valley Cycle and Motorsports and she replied, "Not that I know of."

16      17.     Deputy Garcia asked **BROWN** to explain why there were identification cards of another

17  person in their garage. **BROWN** stated that **KELLEY** made them, and that she didn't know who the

18  woman (referring to the Florida driver's license for J. Cavalier) was, further stating that "It's my picture;

19  he made it, to do stupid shit, like go to Valley Cycle." Deputy Garcia asked **BROWN** to elaborate on

20  their activities at Valley Motorcycle. BROWN specified "A couple days ago. I didn't want to do it." She

21  further added that she and **KELLEY** visited Valley Motorcycle on January 16, 2018 because **KELLEY**

22  wanted her to buy a "bike." **BROWN** then said, "I told him I didn't want to, so that's why I left."

23      18.     Deputy Garcia asked **BROWN** how she got the Chase Bank cashier's check and she

24  replied, "He made it," but did not know if he (**KELLEY**) obtained it from Chase Bank or made a

25  counterfeit check. Deputy Garcia asked BROWN what identity she used to attempt to purchase the bike

26  and if she knew it was fake, she replied, "J. Cavalier," and "Yes."

27      19.     Deputy Garcia asked **BROWN** who made the fake identification, she stated that

28  KELLEY made it, and that someone gave them (her and **KELLEY**) J. Cavalier's identification, social

1   security card, and an American Express credit card. Deputy Garcia asked **BROWN** about the counterfeit

2   money located in the garage and she said, "It's not mine." He asked **BROWN** if it was **KELLEY's** and

3   she said, "If it's not mine, then it has to be his." Deputy Garcia asked **BROWN** who owned the liquid

4   filled shampoo bottle I had found inside the garage which contained "washed out" and counterfeit bills,

5   she replied, "Him" (Referring to **KELLEY**) and that she last saw **KELLEY** with the bills, "Yesterday

6   when I got home." Deputy Garcia ended the interview and booked **BROWN** for her felony warrant

7   charges KCSO case 2018-00004761. The recording was uploaded into the case file as evidence.

8       20.     On February 14, 2018, I contacted United States Secret Service, Special Agent (SA)

9   Tyler Pharo for assistance in identifying the counterfeit Federal Reserve Notes (FRNs) seized at the

10  **TARGET RESIDENCE**. SA Pharo provided documentation for each counterfeit Note, all of which had

11  recent and local passing histories in the Eastern District of California.

12      21.     Based on my training and experience, I know that identity theft Subjects may obtain

13  stolen identities through various means such as burglary or by purchasing the content online. Once

14  obtained, the stolen identities may be used to conduct fraudulent commerce of which, in this case, the

15  Subjects used a counterfeit identification, and a fraud/counterfeit financial obligation (the cashier's

16  check presented to Valley Motorcycle). In my training and experience, I know that identity theft

17  Subjects use electronic devices such as cellular phones and computers to facilitate the production and

18  manufacturing of fraudulent access devices. Once a victim's personally identifiable information is

19  obtained, it may be used to gain access to a victim's credit profile, banking information, and other

20  sensitive information.

21      22.     Based on my training and experience, I know that counterfeiting Subjects employ a

22  counterfeiting tactics called "making RAISED Notes". Raising a note is defined as taking a United

23  States Federal Reserve Note, which in this case was $1 bills, and using chemicals or other methods to

24  remove the ink from the Note; once the ink is removed, Subjects will then attempt to print a larger

25  denomination on the blank Note. This tactic is deployed as means to defeat counterfeit detection

26  methods such as the merchant use of counterfeit detection pens. Subjects often will then take the

27  counterfeit currency to merchants and purchase merchandise at one merchant store only to then return it

28  for legitimate U. S. currency at a later date and store.

## IV.   ELECTRONIC STORAGE AND FORENSIC ANALYSIS

23.     Based on my knowledge, training and experience, I know individuals engaged in financial fraud, identity theft and counterfeit offenses such as those described above often maintain records of their schemes, such as receipts for purchases, fraudulent identities, stolen identities, stolen mail and other records relating to identity theft in their residences.  Records of this kind, including images of counterfeit notes and fraudulent identification documents, are also often stored on electronic and/or computer media.  This evidence is important to seize in order to locate additional victims and/or find evidence relating to the nature and scope of the fraud schemes.

24.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

25.     There is probable cause to believe that things that were once stored on the **TARGET DEVICES** may still be stored there, for at least the following reasons:

a)      Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet.  Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b)      Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c)      Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence

1  can take the form of operating system configurations, artifacts from operating system or

2  application operation, file system data structures, and virtual memory "swap" or paging files.

3  Computer users typically do not erase or delete this evidence, because special software is

4  typically required for that task. However, it is technically possible to delete this information.

5        d)   Similarly, files that have been viewed via the Internet are sometimes

6  automatically downloaded into a temporary Internet directory or "cache."

7      26.   *Forensic evidence*. As further described in Attachment B, this application seeks

8  permission to locate not only electronically stored information that might serve as direct evidence of the

9  crimes described on the warrant, but also forensic evidence that establishes how the **TARGET**

10  **DEVICES** were used, the purpose of its use, who used it, and when. There is probable cause to believe

11  that this forensic electronic evidence might be on the **TARGET DEVICES** because:

12        a)   Data on the storage medium can provide evidence of a file that was once on the

13  storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a

14  paragraph that has been deleted from a word processing file). Virtual memory paging systems

15  can leave traces of information on the storage medium that show what tasks and processes were

16  recently active. Web browsers, e-mail programs, and chat programs store configuration

17  information on the storage medium that can reveal information such as online nicknames and

18  passwords. Operating systems can record additional information, such as the attachment of

19  peripherals, the attachment of USB flash storage devices or other external storage media, and the

20  times the computer was in use. Computer file systems can record information about the dates

21  files were created and the sequence in which they were created.

22        b)   Forensic evidence on a device can also indicate who has used or controlled the

23  device. This "user attribution" evidence is analogous to the search for "indicia of occupancy"

24  while executing a search warrant at a residence.

25        c)   A person with appropriate familiarity with how an electronic device works may,

26  after examining this forensic evidence in its proper context, be able to draw conclusions about

27  how electronic devices were used, the purpose of their use, who used them, and when.

28        d)   The process of identifying the exact electronically stored information on a storage

1  medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic

2  evidence is not always data that can be merely reviewed by a review team and passed along to

3  investigators. Whether data stored on a computer is evidence may depend on other information

4  stored on the computer and the application of knowledge about how a computer behaves.

5  Therefore, contextual information necessary to understand other evidence also falls within the

6  scope of the warrant.

7         e)     Further, in finding evidence of how a device was used, the purpose of its use, who

8  used it, and when, sometimes it is necessary to establish that a particular thing is not present on a

9  storage medium.

10         f)     I know that when an individual uses an electronic device to launder and trade

11  virtual currency, the individual's electronic device will generally serve both as an instrumentality

12  for committing the crime, and also as a storage medium for evidence of the crime. The

13  electronic device is an instrumentality of the crime because it is used as a means of committing

14  the criminal offense. The electronic device is also likely to be a storage medium for evidence of

15  crime. From my training and experience, I believe that an electronic device used to commit a

16  crime of this type may contain: data that is evidence of how the electronic device was used; data

17  that was sent or received; and other records that indicate the nature of the offense.

18      27.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the

19  warrant I am applying for would permit the examination of the device consistent with the warrant. The

20  examination may require authorities to employ techniques, including but not limited to computer-

21  assisted scans of the entire medium, that might expose many parts of the device to human inspection in

22  order to determine whether it is evidence described by the warrant.

23  ///

24

25

26

27

28

28.   *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.


Anthony Sims, Special Agent
Homeland Security Investigations

Subscribed and sworn to before me

this **22** day of February, 2018, at Fresno, California.


ERICA P. GROSJEAN
United States Magistrate Judge


Reviewed and verified as to form:

 /s/ Christopher D. Baker

Christopher D. Baker
Assistant U.S. Attorney

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

Located in the Kern County Sheriff's Office property vault at 1501 L St. Bakersfield, CA 93301

1. **Black Dell Laptop, serial number: DQN2MX1**



1

## ATTACHMENT A

2

## PROPERTY TO BE SEARCHED

3

Located in the Kern County Sheriff's Office property vault at 1501 L St. Bakersfield, CA 93301

4

5
    **1.   White Canon Printer, serial number: KKVB10449;**



14
    17.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# ATTACHMENT A

## PROPERTY TO BE SEARCHED

Located in the Kern County Sheriff's Office property vault at 1501 L St. Bakersfield, CA 93301

    **1. Samsung cell phone, serial number: R28J90113ET**

## ATTACHMENT B

## ITEMS TO BE SEARCHED FOR AND SEIZED

Any and all items, materials, documents, data and information stored in any format, physical or electronic, and any other items that may constitute evidence, contraband, fruits, and instrumentalities of violations of (1) Counterfeiting United States Currency, (2) Making, Uttering or Possessing Counterfeited Securities, and (3) Fraud in Connection with Identification Documents in violation of Title 18, United States Codes, §§ 471, 513(a) and 1028(a)(1) & (7), including:

1.      All documents, information or computer files containing communications, relating to theft of personal information, accessing and transferring funds from bank accounts held by individuals other than the owner, the manufacture of identification documents and the opening of accounts using stolen access devices. The communications include but not limited to, chat logs, private massages, and email messages;

2.      All stolen identification information and counterfeit/authorized access devices, including but not limited to, names, addresses, dates of birth, Social Security numbers, credit card numbers, debit card numbers, bank account numbers, and automated teller machine card personal identification numbers;

3.      All documents, information, images, or records pertaining to the production, manufacturing and passing of United States Federal Reserve Notes, including but not limited to images of U. S. currency security feature such as watermarks, serial numbers, inks, and papers;

4.      All financial records in whatever form related to the production or manufacture of counterfeit identification and credit/debit cards, including but not limited to, bank account records, investment account records, tax records, checkbooks, deposit slips, canceled checks, client checks, cashier's checks, financial statements, wire transfer records, loan records, and credit reports;

5.      All documents, information or records, in whatever form, pertaining to accounts held with Internet Service Providers or Internet use, including but not limited to, account usernames, passwords, subscriber information, and usage logs.

6.      All books, ledgers, and records bearing on the shipment, orders, requests, trades,

1  purchases, or transactions of any kind involving any access devices.

2      7.    All records which evidence operation or ownership or use of computer equipment found

3  in the above residence, including, correspondence, sales receipts, bills for internet access, financial

4  records, tax records, personal photographs, telephone records, notes books, diaries, reference materials,

5  or other personal items, and registration information for any software on the computer.

6      8.    All computer passwords, keywords and other data security devices designed to restrict

7  access to or hide computer software, documentation or data. Data security devices may consist of

8  hardware, software, or other programming code. Any password or encryption key that may control

9  access to a computer operating system, individual computer files, or other electronic data.

10     9.    Evidence and contents of logs and files on a computer or storage device, such as those

11 generated by the computer's operating system, which describes the history and use of the device,

12 including but not limited to files indicating when files were written, were opened, were saved, or were

13 deleted. Evidence tending to show the identity of the person using the computer at the time any records

14 or communications related to an unlicensed money services business was created, sent, received, or

15 viewed. Also, any malware resident on the computer.

16     10.   Records of Internet activity, including firewall logs, caches, browser history and cookies,

17 "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search

18 engine, and records of user-typed web addresses.

19     11.   Evidence of the attachment of other storage devices or similar containers for electronic

20 evidence to any computer or electronic device seized.

21     12.   The following may be seized and searched for all items listed above, and for any items

22 specifically noted in the paragraphs below:

23         a)    Computer hardware, meaning any and all computer equipment. Included within

24      the definition of computer hardware are any electronic devices capable of data processing (such

25      as central processing units, laptop or notebook or netbook or tablet computers, personal digital

26      assistants, gaming consoles, and wireless communication devices to include cellular telephone

27      devices capable of internet access); peripheral input/output devices (such as keyboards, printers,

28      scanners, plotters, monitors, and drives intended for removable media); related communications

AFFIDAVIT                              15

devices (such as modems, wireless routers, cables and connections); storage media, defined below; and security devices, also defined below.

b) Computer software, meaning any and all data, information, instructions, programs, or program codes, stored in the form of electronic, magnetic, optical, or other media, which is capable of being interpreted by a computer or its related components. Computer software may also include data, data fragments, or control characters integral to the operation of computer software, such as operating systems software, applications software, utility programs, compilers, interpreters, communications software, and other programming used or intended to be used to communicate with computer components.

c) Computer related documentation, meaning any written, recorded, printed, or electronically stored material that explains or illustrates the configuration or use of any seized computer hardware, software, or related items.

d) Data security devices, meaning any devices, programs, or data -- whether themselves in the nature of hardware or software -- that can be used or are designed to be used to restrict access to, or to facilitate concealment of, any computer hardware, computer software, computer related documentation, or electronic data records. Such items include, but are not limited to, user names and passwords; data security hardware (such as encryption devices, chips, and circuit boards); data security software or information (such as test keys and encryption codes); and similar information that is required to access computer programs or date or to otherwise render programs or data into usable form.

e) All storage media capable of collecting, storing, maintaining, retrieving, concealing, transmitting, and backing up electronic data or storing an operating system. Included within this paragraph is any information stored in the form of electronic, magnetic, optical, or other coding on computer media or on media capable of being read by a computer or computer related equipment, such as fixed hard disks, external hard disks, removable hard disks (including micro drives), floppy diskettes, compact disks (CDs), digital video disks (DVDs), tapes, optical storage devices, laser disks, thumb drives, ipods, digital cameras, memory cards (e.g. CF or SD cards), Xboxes, flash drives, or other memory storage devices. This also includes areas with

1   digital storage capability on devices such as printers, scanners, wireless routers, etc.

2         f)     The above seizure of computer and computer related hardware relates to such

3   computer related items as being the instrumentalities of crime and also to allow for

4   analysis/search for evidence of crime in an appropriate forensic setting.  Upon a determination

5   that such examination would be more appropriately made in a controlled environment, this

6   storage media may be removed and examined at a laboratory location.

7         g)     Evidence pertaining to obtaining, secreting, transfer, concealment and/or

8   expenditure of proceeds of the operation of an unlicensed money services business, such as:

9   currency, financial instruments, precious metals and gemstones, jewelry, books, records,

10   invoices, receipts, records of real estate transactions, bank statements and related records,

11   passbooks, money drafts, letters of credit, money orders, bank drafts, cashier's checks, bank

12   checks, safe deposit box keys and money wrappers.

AO 93  (Rev. 11/13) Search and Seizure Warrant

 

# UNITED STATES DISTRICT COURT
### for the
Eastern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Dell laptop, S/N DQN2MX1 | )<br>)<br>)<br>)<br>)<br>) |

Case No.

**1: 18 SW   0 0 0 7 1 EPG**

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

        An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location)*:

   Dell laptop, S/N DQN2MX1, located in the Kern County Sheriff's Office property vault at 1501 L St. Bakersfield, CA 93301.

        I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

   See Attachment B, incorporated by reference

        **YOU ARE COMMANDED** to execute this warrant on or before ___14 days___ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

        Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

        The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to __U.S. Magistrate Judge on duty__
*(United States Magistrate Judge)*

        ☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
        ☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   __2/22/18   at   9:30 am__                    _____
                                                                                          *Judge's signature*

City and state:      ___Fresno, California___                    Erica P. Grosjean, U.S. Magistrate Judge
                                                                                  *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

Located in the Kern County Sheriff's Office property vault at 1501 L St. Bakersfield, CA 93301

   1.  **Black Dell Laptop, serial number: DQN2MX1**



## ATTACHMENT B

## ITEMS TO BE SEARCHED FOR AND SEIZED

Any and all items, materials, documents, data and information stored in any format, physical or electronic, and any other items that may constitute evidence, contraband, fruits, and instrumentalities of violations of (1) Counterfeiting United States Currency, (2) Making, Uttering or Possessing Counterfeited Securities, and (3) Fraud in Connection with Identification Documents in violation of Title 18, United States Codes, §§ 471, 513(a) and 1028(a)(1) & (7), including:

1.      All documents, information or computer files containing communications, relating to theft of personal information, accessing and transferring funds from bank accounts held by individuals other than the owner, the manufacture of identification documents and the opening of accounts using stolen access devices. The communications include but not limited to, chat logs, private massages, and email messages;

2.      All stolen identification information and counterfeit/authorized access devices, including but not limited to, names, addresses, dates of birth, Social Security numbers, credit card numbers, debit card numbers, bank account numbers, and automated teller machine card personal identification numbers;

3.      All documents, information, images, or records pertaining to the production, manufacturing and passing of United States Federal Reserve Notes, including but not limited to images of U. S. currency security feature such as watermarks, serial numbers, inks, and papers;

4.      All financial records in whatever form related to the production or manufacture of counterfeit identification and credit/debit cards, including but not limited to, bank account records, investment account records, tax records, checkbooks, deposit slips, canceled checks, client checks, cashier's checks, financial statements, wire transfer records, loan records, and credit reports;

5.      All documents, information or records, in whatever form, pertaining to accounts held with Internet Service Providers or Internet use, including but not limited to, account usernames, passwords, subscriber information, and usage logs.

6.      All books, ledgers, and records bearing on the shipment, orders, requests, trades,

1   purchases, or transactions of any kind involving any access devices.

2         7.      All records which evidence operation or ownership or use of computer equipment found

3   in the above residence, including, correspondence, sales receipts, bills for internet access, financial

4   records, tax records, personal photographs, telephone records, notes books, diaries, reference materials,

5   or other personal items, and registration information for any software on the computer.

6         8.      All computer passwords, keywords and other data security devices designed to restrict

7   access to or hide computer software, documentation or data.  Data security devices may consist of

8   hardware, software, or other programming code.  Any password or encryption key that may control

9   access to a computer operating system, individual computer files, or other electronic data.

10        9.      Evidence and contents of logs and files on a computer or storage device, such as those

11  generated by the computer's operating system, which describes the history and use of the device,

12  including but not limited to files indicating when files were written, were opened, were saved, or were

13  deleted.  Evidence tending to show the identity of the person using the computer at the time any records

14  or communications related to an unlicensed money services business was created, sent, received, or

15  viewed.  Also, any malware resident on the computer.

16        10.     Records of Internet activity, including firewall logs, caches, browser history and cookies,

17  "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search

18  engine, and records of user-typed web addresses.

19        11.     Evidence of the attachment of other storage devices or similar containers for electronic

20  evidence to any computer or electronic device seized.

21        12.     The following may be seized and searched for all items listed above, and for any items

22  specifically noted in the paragraphs below:

23              a)      Computer hardware, meaning any and all computer equipment.  Included within

24        the definition of computer hardware are any electronic devices capable of data processing (such

25        as central processing units, laptop or notebook or netbook or tablet computers, personal digital

26        assistants, gaming consoles, and wireless communication devices to include cellular telephone

27        devices capable of internet access); peripheral input/output devices (such as keyboards, printers,

28        scanners, plotters, monitors, and drives intended for removable media); related communications

1    devices (such as modems, wireless routers, cables and connections); storage media, defined

2    below; and security devices, also defined below.

3         b)    Computer software, meaning any and all data, information, instructions,

4    programs, or program codes, stored in the form of electronic, magnetic, optical, or other media,

5    which is capable of being interpreted by a computer or its related components.  Computer

6    software may also include data, data fragments, or control characters integral to the operation of

7    computer software, such as operating systems software, applications software, utility programs,

8    compilers, interpreters, communications software, and other programming used or intended to be

9    used to communicate with computer components.

10        c)    Computer related documentation, meaning any written, recorded, printed, or

11   electronically stored material that explains or illustrates the configuration or use of any seized

12   computer hardware, software, or related items.

13        d)    Data security devices, meaning any devices, programs, or data -- whether

14   themselves in the nature of hardware or software -- that can be used or are designed to be used to

15   restrict access to, or to facilitate concealment of, any computer hardware, computer software,

16   computer related documentation, or electronic data records.  Such items include, but are not

17   limited to, user names and passwords; data security hardware (such as encryption devices, chips,

18   and circuit boards); data security software or information (such as test keys and encryption

19   codes); and similar information that is required to access computer programs or date or to

20   otherwise render programs or data into usable form.

21        e)    All storage media capable of collecting, storing, maintaining, retrieving,

22   concealing, transmitting, and backing up electronic data or storing an operating system.  Included

23   within this paragraph is any information stored in the form of electronic, magnetic, optical, or

24   other coding on computer media or on media capable of being read by a computer or computer

25   related equipment, such as fixed hard disks, external hard disks, removable hard disks (including

26   micro drives), floppy diskettes, compact disks (CDs), digital video disks (DVDs), tapes, optical

27   storage devices, laser disks, thumb drives, ipods, digital cameras, memory cards (e.g. CF or SD

28   cards), Xboxes, flash drives, or other memory storage devices.  This also includes areas with

AFFIDAVIT                                    16

digital storage capability on devices such as printers, scanners, wireless routers, etc.

       f)     The above seizure of computer and computer related hardware relates to such computer related items as being the instrumentalities of crime and also to allow for analysis/search for evidence of crime in an appropriate forensic setting.  Upon a determination that such examination would be more appropriately made in a controlled environment, this storage media may be removed and examined at a laboratory location.

       g)     Evidence pertaining to obtaining, secreting, transfer, concealment and/or expenditure of proceeds of the operation of an unlicensed money services business, such as: currency, financial instruments, precious metals and gemstones, jewelry, books, records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, money drafts, letters of credit, money orders, bank drafts, cashier's checks, bank checks, safe deposit box keys and money wrappers.

17

AO 93 (Rev. 11/13) Search and Seizure Warrant



# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Canon printer, S/N KKVB10449 | )<br>)<br>)<br>)<br>)<br>) |

Case No.   T: 1 8 SW   0 0 0 7 1 EPG

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location)*:

Canon printer, S/N KKVB10449, located in the Kern County Sheriff's Office property vault at 1501 L St. Bakersfield, CA 93301.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated by reference

**YOU ARE COMMANDED** to execute this warrant on or before ___*14 days*___ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ___U.S. Magistrate Judge___
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   ___2/22/18   at   9:30 am___

___Judge's signature___

City and state:   ___Fresno, California___

___Erica P. Grosjean, U.S. Magistrate Judge___
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

1

## **ATTACHMENT A**

2

## **PROPERTY TO BE SEARCHED**

3   Located in the Kern County Sheriff's Office property vault at 1501 L St. Bakersfield, CA 93301

4

5     **1.   White Canon Printer, serial number: KKVB10449;**



14   17.

## ATTACHMENT B

## ITEMS TO BE SEARCHED FOR AND SEIZED

Any and all items, materials, documents, data and information stored in any format, physical or electronic, and any other items that may constitute evidence, contraband, fruits, and instrumentalities of violations of (1) Counterfeiting United States Currency, (2) Making, Uttering or Possessing Counterfeited Securities, and (3) Fraud in Connection with Identification Documents in violation of Title 18, United States Codes, §§ 471, 513(a) and 1028(a)(1) & (7), including:

1.    All documents, information or computer files containing communications, relating to theft of personal information, accessing and transferring funds from bank accounts held by individuals other than the owner, the manufacture of identification documents and the opening of accounts using stolen access devices. The communications include but not limited to, chat logs, private massages, and email messages;

2.    All stolen identification information and counterfeit/authorized access devices, including but not limited to, names, addresses, dates of birth, Social Security numbers, credit card numbers, debit card numbers, bank account numbers, and automated teller machine card personal identification numbers;

3.    All documents, information, images, or records pertaining to the production, manufacturing and passing of United States Federal Reserve Notes, including but not limited to images of U. S. currency security feature such as watermarks, serial numbers, inks, and papers;

4.    All financial records in whatever form related to the production or manufacture of counterfeit identification and credit/debit cards, including but not limited to, bank account records, investment account records, tax records, checkbooks, deposit slips, canceled checks, client checks, cashier's checks, financial statements, wire transfer records, loan records, and credit reports;

5.    All documents, information or records, in whatever form, pertaining to accounts held with Internet Service Providers or Internet use, including but not limited to, account usernames, passwords, subscriber information, and usage logs.

6.    All books, ledgers, and records bearing on the shipment, orders, requests, trades,

AFFIDAVIT

14

1    purchases, or transactions of any kind involving any access devices.

2        7.     All records which evidence operation or ownership or use of computer equipment found

3   in the above residence, including, correspondence, sales receipts, bills for internet access, financial

4   records, tax records, personal photographs, telephone records, notes books, diaries, reference materials,

5   or other personal items, and registration information for any software on the computer.

6        8.     All computer passwords, keywords and other data security devices designed to restrict

7   access to or hide computer software, documentation or data. Data security devices may consist of

8   hardware, software, or other programming code. Any password or encryption key that may control

9   access to a computer operating system, individual computer files, or other electronic data.

10       9.     Evidence and contents of logs and files on a computer or storage device, such as those

11   generated by the computer's operating system, which describes the history and use of the device,

12   including but not limited to files indicating when files were written, were opened, were saved, or were

13   deleted. Evidence tending to show the identity of the person using the computer at the time any records

14   or communications related to an unlicensed money services business was created, sent, received, or

15   viewed. Also, any malware resident on the computer.

16       10.    Records of Internet activity, including firewall logs, caches, browser history and cookies,

17   "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search

18   engine, and records of user-typed web addresses.

19       11.    Evidence of the attachment of other storage devices or similar containers for electronic

20   evidence to any computer or electronic device seized.

21       12.    The following may be seized and searched for all items listed above, and for any items

22   specifically noted in the paragraphs below:

23           a)     Computer hardware, meaning any and all computer equipment. Included within

24       the definition of computer hardware are any electronic devices capable of data processing (such

25       as central processing units, laptop or notebook or netbook or tablet computers, personal digital

26       assistants, gaming consoles, and wireless communication devices to include cellular telephone

27       devices capable of internet access); peripheral input/output devices (such as keyboards, printers,

28       scanners, plotters, monitors, and drives intended for removable media); related communications

1  devices (such as modems, wireless routers, cables and connections); storage media, defined

2  below; and security devices, also defined below.

3         b)    Computer software, meaning any and all data, information, instructions,

4  programs, or program codes, stored in the form of electronic, magnetic, optical, or other media,

5  which is capable of being interpreted by a computer or its related components.  Computer

6  software may also include data, data fragments, or control characters integral to the operation of

7  computer software, such as operating systems software, applications software, utility programs,

8  compilers, interpreters, communications software, and other programming used or intended to be

9  used to communicate with computer components.

10         c)    Computer related documentation, meaning any written, recorded, printed, or

11  electronically stored material that explains or illustrates the configuration or use of any seized

12  computer hardware, software, or related items.

13         d)    Data security devices, meaning any devices, programs, or data -- whether

14  themselves in the nature of hardware or software -- that can be used or are designed to be used to

15  restrict access to, or to facilitate concealment of, any computer hardware, computer software,

16  computer related documentation, or electronic data records.  Such items include, but are not

17  limited to, user names and passwords; data security hardware (such as encryption devices, chips,

18  and circuit boards); data security software or information (such as test keys and encryption

19  codes); and similar information that is required to access computer programs or date or to

20  otherwise render programs or data into usable form.

21         e)    All storage media capable of collecting, storing, maintaining, retrieving,

22  concealing, transmitting, and backing up electronic data or storing an operating system.  Included

23  within this paragraph is any information stored in the form of electronic, magnetic, optical, or

24  other coding on computer media or on media capable of being read by a computer or computer

25  related equipment, such as fixed hard disks, external hard disks, removable hard disks (including

26  micro drives), floppy diskettes, compact disks (CDs), digital video disks (DVDs), tapes, optical

27  storage devices, laser disks, thumb drives, ipods, digital cameras, memory cards (e.g. CF or SD

28  cards), Xboxes, flash drives, or other memory storage devices.  This also includes areas with

AFFIDAVIT

16

1  digital storage capability on devices such as printers, scanners, wireless routers, etc.

2        f)     The above seizure of computer and computer related hardware relates to such

3  computer related items as being the instrumentalities of crime and also to allow for

4  analysis/search for evidence of crime in an appropriate forensic setting. Upon a determination

5  that such examination would be more appropriately made in a controlled environment, this

6  storage media may be removed and examined at a laboratory location.

7        g)     Evidence pertaining to obtaining, secreting, transfer, concealment and/or

8  expenditure of proceeds of the operation of an unlicensed money services business, such as:

9  currency, financial instruments, precious metals and gemstones, jewelry, books, records,

10  invoices, receipts, records of real estate transactions, bank statements and related records,

11  passbooks, money drafts, letters of credit, money orders, bank drafts, cashier's checks, bank

12  checks, safe deposit box keys and money wrappers.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SEALED

AO 93 (Rev. 11/13) Search and Seizure Warrant



# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of ) | |
| *(Briefly describe the property to be searched* ) | |
| *or identify the person by name and address)* ) | Case No. |
| Samsung cell phone, S/N R28J90113ET, IEM ) | |
| 356445080267724 ) | **1: 1 8 SW  0 0 0 7 1 EPG** |
| ) | |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Eastern _____ District of _____ California _____ *(identify the person or describe the property to be searched and give its location)*:

> Samsung cell phone, S/N R28J90113ET, IEM 356445080267724, located in the Kern County Sheriff's Office property vault at 1501 L St. Bakersfield, CA 93301.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

> See Attachment B, incorporated by reference

**YOU ARE COMMANDED** to execute this warrant on or before __14 days__ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to __duty  U.S. Magistrate Judge__ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    __2/22/18   at   9:30 am__

_____
*Judge's signature*

City and state:    __Fresno, California__     __Erica P. Grosjean, U.S. Magistrate Judge__
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

1

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

Located in the Kern County Sheriff's Office property vault at 1501 L St. Bakersfield, CA 93301

**1.** **Samsung cell phone, serial number: R28J90113ET**

## ATTACHMENT B

## ITEMS TO BE SEARCHED FOR AND SEIZED

Any and all items, materials, documents, data and information stored in any format, physical or electronic, and any other items that may constitute evidence, contraband, fruits, and instrumentalities of violations of (1) Counterfeiting United States Currency, (2) Making, Uttering or Possessing Counterfeited Securities, and (3) Fraud in Connection with Identification Documents in violation of Title 18, United States Codes, §§ 471, 513(a) and 1028(a)(1) & (7), including:

1.      All documents, information or computer files containing communications, relating to theft of personal information, accessing and transferring funds from bank accounts held by individuals other than the owner, the manufacture of identification documents and the opening of accounts using stolen access devices. The communications include but not limited to, chat logs, private massages, and email messages;

2.      All stolen identification information and counterfeit/authorized access devices, including but not limited to, names, addresses, dates of birth, Social Security numbers, credit card numbers, debit card numbers, bank account numbers, and automated teller machine card personal identification numbers;

3.      All documents, information, images, or records pertaining to the production, manufacturing and passing of United States Federal Reserve Notes, including but not limited to images of U. S. currency security feature such as watermarks, serial numbers, inks, and papers;

4.      All financial records in whatever form related to the production or manufacture of counterfeit identification and credit/debit cards, including but not limited to, bank account records, investment account records, tax records, checkbooks, deposit slips, canceled checks, client checks, cashier's checks, financial statements, wire transfer records,  loan records, and credit reports;

5.      All documents, information or records, in whatever form, pertaining to accounts held with Internet Service Providers or Internet use, including but not limited to, account usernames, passwords, subscriber information, and usage logs.

6.      All books, ledgers, and records bearing on the shipment, orders, requests, trades,

1  purchases, or transactions of any kind involving any access devices.

2      7.      All records which evidence operation or ownership or use of computer equipment found

3  in the above residence, including, correspondence, sales receipts, bills for internet access, financial

4  records, tax records, personal photographs, telephone records, notes books, diaries, reference materials,

5  or other personal items, and registration information for any software on the computer.

6      8.      All computer passwords, keywords and other data security devices designed to restrict

7  access to or hide computer software, documentation or data. Data security devices may consist of

8  hardware, software, or other programming code. Any password or encryption key that may control

9  access to a computer operating system, individual computer files, or other electronic data.

10      9.      Evidence and contents of logs and files on a computer or storage device, such as those

11  generated by the computer's operating system, which describes the history and use of the device,

12  including but not limited to files indicating when files were written, were opened, were saved, or were

13  deleted. Evidence tending to show the identity of the person using the computer at the time any records

14  or communications related to an unlicensed money services business was created, sent, received, or

15  viewed. Also, any malware resident on the computer.

16      10.    Records of Internet activity, including firewall logs, caches, browser history and cookies,

17  "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search

18  engine, and records of user-typed web addresses.

19      11.    Evidence of the attachment of other storage devices or similar containers for electronic

20  evidence to any computer or electronic device seized.

21      12.    The following may be seized and searched for all items listed above, and for any items

22  specifically noted in the paragraphs below:

23      a)    Computer hardware, meaning any and all computer equipment. Included within

24  the definition of computer hardware are any electronic devices capable of data processing (such

25  as central processing units, laptop or notebook or netbook or tablet computers, personal digital

26  assistants, gaming consoles, and wireless communication devices to include cellular telephone

27  devices capable of internet access); peripheral input/output devices (such as keyboards, printers,

28  scanners, plotters, monitors, and drives intended for removable media); related communications

1    devices (such as modems, wireless routers, cables and connections); storage media, defined

2    below; and security devices, also defined below.

3    　　　　b)　　Computer software, meaning any and all data, information, instructions,

4    programs, or program codes, stored in the form of electronic, magnetic, optical, or other media,

5    which is capable of being interpreted by a computer or its related components.  Computer

6    software may also include data, data fragments, or control characters integral to the operation of

7    computer software, such as operating systems software, applications software, utility programs,

8    compilers, interpreters, communications software, and other programming used or intended to be

9    used to communicate with computer components.

10   　　　　c)　　Computer related documentation, meaning any written, recorded, printed, or

11   electronically stored material that explains or illustrates the configuration or use of any seized

12   computer hardware, software, or related items.

13   　　　　d)　　Data security devices, meaning any devices, programs, or data -- whether

14   themselves in the nature of hardware or software -- that can be used or are designed to be used to

15   restrict access to, or to facilitate concealment of, any computer hardware, computer software,

16   computer related documentation, or electronic data records.  Such items include, but are not

17   limited to, user names and passwords; data security hardware (such as encryption devices, chips,

18   and circuit boards); data security software or information (such as test keys and encryption

19   codes); and similar information that is required to access computer programs or date or to

20   otherwise render programs or data into usable form.

21   　　　　e)　　All storage media capable of collecting, storing, maintaining, retrieving,

22   concealing, transmitting, and backing up electronic data or storing an operating system.  Included

23   within this paragraph is any information stored in the form of electronic, magnetic, optical, or

24   other coding on computer media or on media capable of being read by a computer or computer

25   related equipment, such as fixed hard disks, external hard disks, removable hard disks (including

26   micro drives), floppy diskettes, compact disks (CDs), digital video disks (DVDs), tapes, optical

27   storage devices, laser disks, thumb drives, ipods, digital cameras, memory cards (e.g. CF or SD

28   cards), Xboxes, flash drives, or other memory storage devices.  This also includes areas with

AFFIDAVIT                                          16

1  digital storage capability on devices such as printers, scanners, wireless routers, etc.

2        f)    The above seizure of computer and computer related hardware relates to such

3  computer related items as being the instrumentalities of crime and also to allow for

4  analysis/search for evidence of crime in an appropriate forensic setting.  Upon a determination

5  that such examination would be more appropriately made in a controlled environment, this

6  storage media may be removed and examined at a laboratory location.

7        g)    Evidence pertaining to obtaining, secreting, transfer, concealment and/or

8  expenditure of proceeds of the operation of an unlicensed money services business, such as:

9  currency, financial instruments, precious metals and gemstones, jewelry, books, records,

10  invoices, receipts, records of real estate transactions, bank statements and related records,

11  passbooks, money drafts, letters of credit, money orders, bank drafts, cashier's checks, bank

12  checks, safe deposit box keys and money wrappers.

AFFIDAVIT

17